UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Linda Rancourt</u>

    v.                                                  Case No. 20-cv-351-PB
                                                        Opinion No. 2022 DNH 013
<u>Hillsborough County et al.</u>

## MEMORANDUM AND ORDER

Linda Rancourt filed this action to recover damages after she suffered life-threatening complications from severe hypertension on the third day of her detention at Hillsborough County's Valley Street Jail in April 2017.  The sole remaining claims are against four nurses employed by the jail who allegedly had interactions with Rancourt on the first day of her detention.  Rancourt asserts federal claims under 42 U.S.C. § 1983 for constitutionally inadequate medical care and state law claims for negligence.  The crux of her claims is that the nurses failed to take appropriate steps to address her high blood pressure beginning with her initial booking at 4:20 a.m. and continuing until 2:15 p.m. on April 11, when their involvement in Rancourt's care ended.  Defendants have moved for summary judgment on all claims.  For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

Rancourt, then 47 years old, was booked into the Valley Street Jail as a pretrial detainee in the early morning hours of April 11, 2017. At 4:20 a.m., Nurse Flavia Martin completed various medical forms with Rancourt as part of the initial intake process, including a screening form for mental health. The screening form reflects that Rancourt's blood pressure was 180/120 and that she complained of a headache. Rancourt also reported a history of hypertension and that she had suffered three strokes in the prior two years, two of which had occurred six months prior. In addition, Rancourt explained that she had been prescribed three medications to regulate her blood pressure and that she had used heroin the day before her arrest. In a summary of the intake interview in Rancourt's progress notes, Nurse Martin noted that Rancourt had not taken her medications for the past two weeks and had pitting edema in her lower left leg.

At 5:10 a.m., Nurse Martin placed Rancourt on an opioid detoxification watch. This meant that nursing staff would examine her, including taking her vitals, every shift and would record the results in a detoxification flow sheet. Nurse Martin conducted the first detoxification check at 9:00 a.m. At that time, Rancourt's blood pressure was 180/110, but she demonstrated no other concerning symptoms.

At 9:50 a.m., Nurse Xina Barnes filled out a medication verification form, indicating that she had confirmed with Rancourt's pharmacy three active prescriptions for hypertension: Norvasc (5 mg, once a day), Diovan (320 mg, once a day), and Carvedilol (25 mg, twice a day).  PA Christopher Schweiger, the jail's outside medical provider, reviewed that form and prescribed all three medications at 2:00 p.m.  He also instructed that Rancourt's blood pressure should be checked three times per week for two weeks.

At 2:15 p.m., Nurse Katelyn Hrubiec[1] completed a medical history and screening form with Rancourt and obtained a signed consent to treat form.  The medical history form largely recorded the same information Rancourt provided to Nurse Martin. This was the last documented interaction between Rancourt and any of the nurse defendants.[2]

---

[1] At the time, Hrubiec's title was Medical Assistant.

[2] The undisputed evidence shows that the fourth nurse defendant, Dorothea Malo, was not involved in Rancourt's care at any time during the relevant period.  Plaintiff's expert has asserted that Nurse Malo recorded Rancourt's blood pressure as 180/120 on April 11 and 160/100 on April 12.  The only apparent basis for his assertion is the staff initial "M" associated with those two entries in the detoxification flow sheet.  Defendants, however, have presented evidence that it was Nurse Laura Morrison who made those two entries and that Nurse Malo, who did not work on April 11, had no contact with Rancourt.  Because Rancourt has not controverted this evidence, Nurse Malo is entitled to summary judgment on all claims against her.

3

Rancourt's medication administration record lists PA Schweiger's prescriptions and charts the dates, and in some cases the times, Rancourt was given each medication. According to the chart, Nurse Barnes gave Rancourt 5 mg of Amlodipine (an alternate name for Norvasc) and 25 mg of Carvedilol on April 11. The chart did not specify exactly when those medications were administered. Another nurse noted in the chart that Rancourt was given a second dose of Carvedilol that evening at eight o'clock. Diovan was not administered that day.

The following morning, Nurse Lynn Wheeler[3] wrote in Rancourt's progress notes, "Meds not in yet." She later added that medications were given at noon that day. Based on these notes, plaintiff's expert, Dr. Robert Cohen, concluded that Rancourt did not receive any medication for her hypertension until noon on April 12.

Two days after defendants' last interactions with Rancourt, she was taken to the Elliot Hospital in critical condition. She was admitted to the intensive care unit and diagnosed with a hypertensive emergency and posterior reversible encephalopathy syndrome.

---

[3] Nurse Wheeler was named as a defendant in the complaint, but Rancourt did not complete service on her. As a result, Nurse Wheeler is no longer a named defendant.

4

Plaintiff's expert has presented two theories to explain how the nurses breached their duties of care to Rancourt. First, Dr. Cohen faults them for failing to consult a physician about having Rancourt hospitalized immediately because the nurses knew or should have known that she was at high risk for imminent cardiovascular events given her severe hypertension and complex medical history. Second, he asserts that the nurses knew or should have known that Rancourt's hypertension needed to be controlled within a few hours of her detention, but they failed to ensure that Rancourt had timely access to her prescription medications. According to Dr. Cohen, Rancourt's condition deteriorated to the point that she nearly died because hypertensive treatment was not started promptly.

Rancourt sued in March 2020, asserting claims for negligence and constitutionally inadequate medical care against Hillsborough County, the County's outside medical providers, and the nurse defendants. After Rancourt agreed to voluntarily dismiss her claims against the outside medical providers, the County and the nurses moved for summary judgment based in part on Rancourt's failure to disclose a necessary medical expert. After I allowed Rancourt to file a belated expert disclosure, I held a motion hearing during which Rancourt's claims against the County were dismissed by agreement, leaving only the claims against the four nurses. I denied defendants' motion as to

those claims without prejudice and advised the parties that Rancourt would be allowed to supplement her expert disclosure before the motion could be renewed. Defendants have now renewed their motion for summary judgment, and Rancourt has objected.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). In this context, a "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A "genuine dispute" exists if a factfinder could resolve the disputed fact in the nonmovant's favor. Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a

6

trier of fact could reasonably resolve that issue in [her] favor." Irobe, 890 F.3d at 377 (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)).  If the nonmovant fails to adduce such evidence on which a reasonable factfinder could base a favorable verdict, the motion must be granted.  Celotex, 477 U.S. at 324.  In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor.  Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

### III. ANALYSIS

Defendants argue that they are entitled to summary judgment on all claims because uncontested facts refute both theories of liability offered by plaintiff's expert.  According to defendants, they cannot be faulted for failing to ensure that Rancourt had timely access to her prescription medications because the record shows that she received two of the three medications while in their care.  Defendants also contend that they are shielded from liability for failing to have Rancourt hospitalized because the treating physician was aware of Rancourt's condition and did not order hospitalization.  I address these arguments after setting out the applicable law.

Because Rancourt was a pretrial detainee, her § 1983 claims for constitutionally inadequate medical care are rooted in the due process clause of the Fourteenth Amendment.  See City of

7

Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).  The circuit courts disagree whether such claims are subject to the Eighth Amendment's two-part subjective and objective deliberate indifference test or the purely objective test that the Supreme Court applied to pretrial detainees' excessive force claims in Kingsley v. Hendrickson, 576 U.S. 389 (2015).  See Estate of Vallina v. Cnty. of Teller Sheriff's Off., 757 F. App'x 643, 646-47 (10th Cir. 2018) (collecting cases and noting that the Ninth, Second, and Seventh Circuits have applied the objective standard to detainee inadequate medical care claims, while the Fifth, Eighth, and Eleventh Circuits have declined to extend Kingsley to such claims).  As Judge Laplante recently noted in analyzing this issue, the First Circuit has continued to apply the Eighth Amendment test post-Kingsley to detainee claims of constitutionally inadequate medical care.  See Sacco v. Hillsborough Cnty. House of Corr., 2021 DNH 086, 2021 WL 2012639, at *5 (D.N.H. May 20, 2021) (citing Miranda-Rivera v. Toledo-Davila, 813 F.3d 64 (1st Cir. 2016); Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018)).  Accordingly, I agree with defendants that I must apply the Eighth Amendment test to Rancourt's claims.

Under this test, a plaintiff alleging constitutionally inadequate medical care must show that prison officials displayed "deliberate indifference to serious medical needs."

8

Estelle v. Gamble, 429 U.S. 97, 106 (1976). This standard has both objective and subjective components. Zingg, 907 F.3d at 635. The objective component requires the plaintiff to prove that she had a serious medical need "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc) (cleaned up). Under the subjective component, the plaintiff must prove that the defendant had "a sufficiently culpable state of mind . . . that amounts to deliberate indifference to [her] health or safety." Zingg, 907 F.3d at 635. "The obvious case would be a denial of needed medical treatment in order to punish the inmate." Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993). But "wanton" or criminal recklessness in the treatment provided will also suffice, which requires a showing that the defendant had "actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm." Zingg, 907 F.3d at 635 (cleaned up). Such a showing can be made by proving that the defendant provided medical care that was "so inadequate as to shock the conscience." Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006) (cleaned up). In other words, the care must be "so clearly inadequate as to

9

amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (cleaned up).

Defendants first argue that Rancourt cannot satisfy the objective prong of the deliberate indifference test because her hypertension did not qualify as a serious medical need. I disagree. There is sufficient evidence from which a jury could find that Rancourt was diagnosed with hypertension, had suffered three prior strokes, presented with a blood pressure reading in the severe range, and was prescribed medications to prevent the life-threatening consequences of this disease. That is enough to show that her medical need was objectively serious. See, e.g., Harris v. Poska, 728 F. App'x 149, 153 (3d Cir. 2018); Hunt v. Uphoff, 199 F.3d 1220, 1223 (10th Cir. 1999).

Defendants' main argument is that Rancourt's claims fail on the subjective prong because the record refutes her expert's assertions that they refused to provide her essential care. Specifically, defendants contend that Nurse Barnes administered two blood pressure medications and that the treating physician did not order hospitalization despite his awareness of Rancourt's condition. These arguments are unpersuasive because there is minimally sufficient evidence in the record to create a genuine dispute of material fact as to both contentions.

Rancourt's expert has posited that defendants rendered inadequate medical care to Rancourt because they failed to

10

ensure that she was promptly started on medication to control her blood pressure.  Defendants argue that this theory is a non-starter because they provided Rancourt two of the three medications on April 11.  But whether and when those medications were administered is a disputed fact.  As plaintiff's expert points out, a nurse's notation in Rancourt's progress notes entered on the next day suggests that no medications were given on April 11 because Rancourt's prescriptions had not yet been filled.  Defendants' explanation for that inconsistency – that medications given on April 11 came from stock available at the jail – is certainly plausible.  But viewing the evidence in the light most favorable to Rancourt, as I must at this stage, I cannot say the record undisputedly establishes that defendants gave Rancourt any hypertension medication while she was in their care.  Accordingly, defendants' attack on Rancourt's first theory of liability must fail.[4]

---

[4] Defendants also note that Rancourt has offered no evidence that the alleged delay in providing her with medications caused her injuries two days later.  They have failed to develop that argument.  In any event, plaintiff's expert has asserted that defendants' failure to start medication promptly exacerbated Rancourt's condition, which is minimally sufficient to show that the delay caused some degree of harm.  Cf. Williams v. Liefer, 491 F.3d 710, 715-16 (7th Cir. 2007) (holding that it was for jury to decide whether delay in medical assistance to hypertensive inmate caused harm where there was evidence "that the delay unnecessarily prolonged and exacerbated [his] pain and unnecessarily prolonged his high blood pressure").

Rancourt's expert has also asserted that defendants' failure to appeal to a treating physician for her immediate hospitalization constituted deliberate indifference.  Defendants maintain that this theory falters because when they consulted a treating physician (PA Schweiger), he did not order hospitalization but instead approved a different course of treatment - medications and blood pressure monitoring.  Assuming that nurses who fully inform a treating physician about a patient's condition can defer to the physician's orders without fear of liability in most circumstances, defendants have not offered evidence that they provided PA Schweiger with all of the information he needed to make an informed decision.  According to plaintiff's expert, defendants knew or should have known that Rancourt required hospitalization because her blood pressure reading was in the severe range and they were aware of her complex medical history, including that she had suffered multiple strokes.  The record supports an inference that PA Schweiger was not apprised of that medical history.  The only form he signed – the medication verification sheet – merely lists the three medications Rancourt had been prescribed and her blood pressure reading.  Based on this record, a jury could reasonably conclude that PA Schweiger was not fully informed about Rancourt's risk factors, which would preclude defendants from relying on his alternative course of treatment as a shield

from liability. Cf. Darrah v. Krisher, 865 F.3d 361, 371 (6th Cir. 2017) (concluding that nurse was not entitled to summary judgment on deliberate indifference claim given evidence that she had failed to relay important information to inmate's treating physicians).

In sum, genuine issues of material fact exist as to whether defendants' actions (or inaction) constituted deliberate indifference to Rancourt's serious medical needs.[5]

## IV. CONCLUSION

Defendants' motion for summary judgment (Doc. No. 29) is granted with respect to claims against Nurse Malo and denied with respect to claims against Nurses Martin, Barnes, and Hrubiec.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

February 4, 2022

cc: Counsel of record

---

[5] Defendants argue that they are immune from liability on the negligence claims because they acted within the scope of their employment and reasonably believed in the legality of their actions. See N.H. Rev. Stat. Ann. § 507-B:4, IV. Their argument hinges on the contention that they were not deliberately indifferent to Rancourt's medical needs. Accordingly, it fails for the same reasons as their challenge to her § 1983 claims.