UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Linda Rancourt**

    v.                                                   Case No. 20-cv-351-PB
                                                           Opinion No. 2022 DNH 067

**Hillsborough County et al.**

**MEMORANDUM AND ORDER**

The remaining defendants here seek reconsideration of my order denying their motion for summary judgment on Linda Rancourt's claims for constitutionally inadequate medical care and negligence. At the motion hearing, I allowed defendants to file supplemental briefing and evidence in support of their motion, after I previously extended a similar courtesy to Rancourt when she sought first to file a belated expert disclosure and later to supplement that disclosure. After defendants' filing, Rancourt submitted a supplemental response. Because the record now before me establishes defendants' entitlement to summary judgment, I grant their motion for reconsideration and dismiss all remaining claims.

### I.  BACKGROUND

Rancourt suffered a hypertensive event on the third day of her incarceration at the Valley Street Jail. After settling her claims against the jail's outside medical providers, Rancourt sued three nurses who interacted

with her on the first day of her incarceration, April 11, 2017.[1] Nurse Flavia Martin completed an intake mental health screening form with Rancourt at 4:20 a.m. The screening form recorded that Rancourt had a blood pressure reading of 180/120, had complained of a headache, had suffered three strokes in the prior two years, had active prescriptions for three hypertension medications at Sam's Club pharmacy, and had used one gram of heroin per day—including the prior day. Nurse Martin's only other involvement in Rancourt's care was conducting a detoxification watch check at 9:00 a.m., at which time Rancourt's condition remained unchanged. An hour later, Nurse Martin finished her double shift and left.

After the screening form is completed, the jail's practice is for the nursing staff to contact the inmate's pharmacy to verify any prescriptions. Information obtained from the pharmacy is recorded in the medication verification form. If the screening form is completed during the third shift, when pharmacies usually are not open, a first shift nurse contacts the pharmacy. Nurse Xina Barnes was the first shift nurse who called Sam's Club pharmacy that morning and verified that Rancourt had active prescriptions for three hypertension medications. She recorded those prescriptions in the medication verification form and signed it at 9:50 a.m.

---

[1] I dismissed Rancourt's claims against a fourth nurse in the summary judgment order. I have not been asked to reconsider that ruling.

2

After medications are verified, the next step is for the nursing staff to request orders from the jail's medical providers so that the prescriptions can be ordered from the jail's pharmacy and administered to the inmate. If no provider is at the facility, the nurse obtains orders by telephone and records them on the medication verification form as a telephonic order. If a provider is at the facility, the nurse leaves a copy of the inmate's screening form with the medication verification form for the provider to review. The provider then writes the orders directly on the medication verification form and signs it.

PA Christopher Schweiger, the on-duty provider that day, was at the facility. He handwrote orders for the three hypertension medications on Rancourt's medication verification form, directed that her blood pressure be checked three times per week for two weeks, and signed the form. Although PA Schweiger did not include a date or time when he signed the form, he would have done so between 9:50 a.m., when Nurse Barnes completed the form, and 1:54 p.m., when another nurse ordered the medications from the jail's pharmacy.

Once the provider writes prescriptions on the medication verification form, the nurses may administer those medications. The jail keeps a stock of commonly prescribed medications so that they can be given to inmates before prescriptions from the pharmacy arrive overnight. Two of the prescriptions PA Schweiger ordered for Rancourt, Amlodipine and Carvedilol, are

3

commonly prescribed hypertension medications that the jail typically keeps in stock.

All medications given to an inmate are recorded on a chart called the medication administration record. When a nurse administers a medication, the nurse must initial one of the four boxes corresponding with the date and time when the medication was given. The first box is used for the morning medication pass (8:00 a.m.), the second for the noon medication pass (12:00 p.m.), the third for the afternoon medication pass (4:00 p.m.), and the fourth for the evening medication pass (8:00 p.m.).

Rancourt's medication administration record shows that, on April 11, Nurse Barnes initialed the second box next to Amlodipine and Carvedilol. Although she does not have a specific recollection of administering those medications, Nurse Barnes stated in a sworn affidavit that she would not have initialed those boxes unless she actually gave the two medications to Rancourt on that day. She also stated that it was her practice to initial the second box on the chart when she gave medications after 8:00 a.m. and before 4 p.m. In this case, Nurse Barnes would have administered the medications sometime between 9:50 a.m., after PA Schweiger wrote the prescription orders, and 2:42 p.m., when her shift ended. Because the pharmacy would not deliver Rancourt's medications until the following day, Nurse Barnes would have used stock medications.

The third nurse defendant, Katelyn Hrubiec, completed a medical history form and a consent to treat form with Rancourt at 2:15 p.m. She would have known that PA Schweiger had ordered Rancourt's medications because she referred to the medication verification form in her notes.

The medication administration record shows that the nursing staff gave Rancourt a second dose of Carvedilol during the evening medication pass on April 11. The next morning, a nurse wrote in Rancourt's progress notes, "Meds not in yet." This notation would have referred to Rancourt's prescription medications on order from the pharmacy, which were expected to arrive that day.

On April 13, two days after the nurse defendants treated Rancourt, she was hospitalized in serious condition due to a hypertensive emergency. This lawsuit followed.

## II.   STANDARD OF REVIEW

Defendants seek reconsideration of my interlocutory ruling denying their motion for summary judgment. Because final judgment has not been rendered, I consider defendants' motion under Local Rule 7.2(d), which requires a motion for reconsideration to "demonstrate that the order was based on a manifest error of fact or law." Reconsideration is "an extraordinary remedy which should be used sparingly." Fabrica de Muebles J.J. Alvarez, Inc. v. Inversiones Mendoza, Inc., 682 F.3d 26, 31 (1st Cir. 2012)

(cleaned up). Summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Unibank for Sav. v. 999 Priv. Jet, LLC, 31 F.4th 1, 4-5 (1st Cir. 2022).

## III.   ANALYSIS

Defendants move for reconsideration of my order denying their motion for summary judgment on Rancourt's deliberate indifference and negligence claims. As I explained in that order, Rancourt's claims rest on the expert disclosure of Dr. Robert Cohen, who has opined that defendants were deliberately indifferent to Rancourt's medical needs. Two key assumptions underpin Dr. Cohen's opinion: (1) that Rancourt was not given any blood pressure medication on April 11, and (2) that the nurses did not consult a medical provider to have Rancourt hospitalized. In their motion for summary judgment, defendants argued that Rancourt's claims fail because: (1) Nurse Barnes administered two of the three medications on the day in question, and (2) the nurses consulted PA Schweiger, who did not order hospitalization but chose to treat Rancourt with prescription medications. I denied defendants' motion because the record then before me was insufficiently developed to demonstrate that no material facts were in genuine dispute. Specifically, defendants had relied on medical records without adequately explaining either their meaning or the jail's relevant practices and procedures.

6

After defendants moved for reconsideration, I let them supplement the record with information that would fill the evidentiary gaps I identified in the order. Ordinarily, a motion for reconsideration should not be used to marshal evidence that could have been presented as part of the summary judgment record. Considerations of fairness and judicial economy informed my judgment to allow the record to be supplemented in this case. When defendants first moved for summary judgment because plaintiff had failed to disclose a necessary expert, I allowed Rancourt to belatedly disclose an expert and later permitted her to supplement that disclosure. I also let Rancourt respond to defendants' supplemental filing, including by submitting additional evidence to controvert defendants' version of the facts.

Defendants' supplemental filing has cured the defects that led me to deny their motion for summary judgment, and plaintiff has not come forward with any countervailing evidence. The record now shows that Rancourt received two of the three medications between 9:50 a.m. and 2:42 p.m. on April 11. Absent evidence to the contrary, I must accept Nurse Barnes's sworn statement that she would not have written her initials in the corresponding boxes on Rancourt's medication administration form unless she gave her those two medications during that time. The record shows that the medications came from the stock available at the jail for use before inmates' prescription orders can be filled. After Nurse Barnes left for the day,

another nurse wrote in the chart that she gave Rancourt a second dose of one of the two medications. Given the undisputed evidence that Rancourt's prescriptions would not arrive from the pharmacy until the next day, the evidence of the second administration of medications on April 11 further supports defendants' position that, once PA Schweiger wrote the prescription orders on or before 1:54 p.m. on April 11, the nursing staff began administering stock medications to Rancourt.

The notation in Rancourt's progress notes entered the following day that Rancourt's medications were "not in yet" does not validate Dr. Cohen's assumption that no medications were given on April 11. Construing the record as a whole in the light most favorable to Rancourt, the only plausible reading of that notation is that it referred to the receipt of prescriptions ordered from the jail's pharmacy. Again, that reading tracks the pharmacy order fulfillment process and the nurses' initials in the medication administration record showing that Rancourt received two doses of Carvedilol and one dose of Amlodipine on April 11.

Rather than offering evidence to support Dr. Cohen's assumption that she received no stock medications on April 11, Rancourt contends that defendants cannot rely on self-serving affidavits to meet their burden. That is not the law. "A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless

8

competent to support or defeat summary judgment." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) (cleaned up); see also Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 413 (1st Cir. 2015). Once defendants met their evidentiary burden, the onus shifted to Rancourt to present evidence that could salvage her claims. Dr. Cohen's opinion that no medications were given cannot satisfy that burden because defendants have offered evidence showing that the sole basis for his opinion does not withstand scrutiny. And Rancourt offered no other evidence.

It is also now undisputed that PA Schweiger was sufficiently informed about Rancourt's condition when he chose her course of treatment. Because he was at the jail, he would have been given the intake screening form along with the medication verification form he used to order her prescriptions. The screening form listed Rancourt's relevant medical history, including her prior strokes. So informed, PA Schweiger did not order hospitalization and instead directed the nursing staff to administer medications and monitor Rancourt's blood pressure.

Rancourt insists that the nurses still had a duty to disregard the medical provider's instructions and call 911 on Rancourt's behalf. There is no evidence, however, tending to show that PA Schweiger's chosen treatment was so inadequate that no reasonable nurse could have relied on it. Dr. Cohen's opinion that Rancourt's condition should have been treated in an

9

intensive care unit cannot close that evidentiary gap. At most, it shows a disagreement about the proper course of treatment. But "substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation." Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007); see also Ramos v. Patnaude, 640 F.3d 485, 490 (1st Cir. 2011) ("[M]isjudgment, even negligent misjudgment, is not deliberate indifference."). Rancourt cannot show that defendants were deliberately indifferent to her medical needs because no reasonable factfinder reviewing this record could find that the care provided was "so clearly inadequate as to amount to a refusal to provide care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (cleaned up).[2] Accordingly, Rancourt's claims for constitutionally inadequate medical care cannot stand.

The negligence claims likewise fail. Without evidence of reckless or wanton conduct, defendants are entitled to official immunity under state law. See N.H. Rev. Stat. Ann. § 507-B:4, IV; Farrelly v. City of Concord, 168 N.H. 430, 446 (2015). For the same reasons that Rancourt cannot show that defendants were deliberately indifferent to her medical needs, she cannot show that their conduct was wanton or reckless. See Murphy v. Strafford Cnty., 2022 DNH 050, 2022 WL 1063829, at *5 (D.N.H.) (describing the

---

[2] I described the applicable standard in detail in the summary judgment order.

10

official immunity standard and finding it functionally equivalent to the deliberate indifference standard).

In summary, the nurse defendants participated in Rancourt's care only at an early stage, well before her condition deteriorated. During that time, they accurately recorded Rancourt's medical history and blood pressure reading, shared that information with PA Schweiger, and followed his chosen course of treatment by administering stock medications. The record does not support an inference that defendants were in any way culpable when, days later, Rancourt was hospitalized due to a hypertensive emergency. Because Rancourt has not marshaled evidence from which a reasonable factfinder could conclude that defendants were deliberately indifferent to her medical needs, her claims against them are not triable.

## IV.  CONCLUSION

Defendants' motion for reconsideration (Doc. No. 33) is granted. Upon reconsideration, I grant defendants' motion for summary judgment (Doc. No. 29) in full. The clerk of court shall enter judgment and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

May 26, 2022

cc:   Counsel of record

11